IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON SCUTT, | Case No. 20-cv-00138-DKW-RT |
| Plaintiff, | **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND; AND (3) DENYING MOTION FOR APPOINTMENT OF COUNSEL**[1] |
| v. | |
| STATE OF HAWAII BESSD (SNAP FOODSTAMP PROGRAM), | |
| Defendant. | |

On March 27, 2020, Plaintiff Jason Scutt, proceeding pro se, filed a

Complaint against the State of Hawaiʻi's Benefit, Employment & Support Services

Division (BESSD), a division of the State's Department of Human Services

(DHS).   Dkt. No. 1.   Scutt also filed an application to proceed *in forma pauperis*

("IFP Application") and a motion for appointment of counsel.   Dkt. Nos. 3-4.

I.     **The IFP Application**

Federal courts can authorize the commencement of any suit without

prepayment of fees or security by a person who submits an affidavit that

demonstrates an inability to pay.   *See* 28 U.S.C. § 1915(a)(1).   While

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

In the IFP Application, Scutt states that he is employed by Iao Valley Scutt CPA and Consulting PLLC (Iao Valley CPA), but receives no pay or wages. He states that, in the last 12 months, he has received $50 from Iao Valley CPA, less than $200 from part-time consulting work, and approximately $4,000 in gifts from family. Scutt states that he is living on savings and credit and has less than $2,500 in a checking or savings account. He further states that he owns Iao Valley CPA, but, in his motion for appointment of counsel, he states that the company has no value. Scutt states that he has regular monthly expenses of $1,000 for housing, $1,000 for transportation, $2,000 for a personal loan or credit cards, $400 for utilities, and $2,000 for groceries and medical expenses. Scutt also states that he owes approximately $25,000 in credit card or personal loan debt and approximately $175,000 in student loan debt.

In light of the representations set forth above from Scutt, the Court finds that he has shown an inability to pay or give security for the $400 filing fee while still

affording the necessities of life.   *See Escobedo v. Applebees*, 787 F.3d 1226, 1234

(9th Cir. 2015).   As a result, the Court GRANTS the IFP Application, Dkt. No. 3.

## II.   <u>Screening of Scutt's Complaint</u>

The Court subjects each civil action commenced pursuant to 28 U.S.C.

§ 1915(a) to mandatory screening and can order the dismissal of any claims it finds

"frivolous, malicious, failing to state a claim upon which relief may be granted, or

seeking monetary relief from a defendant immune from such relief."   28 U.S.C.

§ 1915(e)(2)(B).   In doing so, the Court liberally construes a pro se Complaint.

*Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).   However, the Court

cannot act as counsel for a pro se litigant, such as by supplying the essential

elements of a claim.   *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of*

*Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In his Complaint, Scutt makes the following allegations.   After being

terminated by Carbonaro CPA, he was unable to find suitable employment.   At

some point,[2] he applied for unemployment benefits through a State of Hawaiʻi

website.   In doing so, he was required to disclose needed accommodations for

disability, which he did.   He was subsequently denied benefits or an

_____

[2]In the Complaint, Scutt states that he applied for unemployment in May 2020.   However, given that that date had not occurred at the time the Complaint was filed, the Court will assume it is a typographical error.

3

accommodation "in the form of searching for jobs that I would be physically able to perform."   He has not received any local offers of employment.   He was then required to apply for food stamp benefits from BESSD, but he was denied assistance.   He was then forced to rely on dwindling credit card balances at high interest rates.   At some point, he had a "phone argument" with a State employee, who indicated dislike for "houlis" and refused to process his "request."[3]   He was then mailed a denial of benefits, citing his rental income, which had been intentionally misstated as $1,300.   Scutt states that "[a]ctual accounting records," which he provided, show that, if his expenses were included, he would be below the calculated poverty guidelines.   In the Complaint, boxes are checked indicating that Scutt is complaining about a failure to employ, a failure to promote, and a failure to provide reasonable accommodation "to participate in program or find appropriate work[.]"   It is also stated that Scutt was discriminated against on account of his race or color and disability.

Liberally construing the foregoing, it appears that Scutt is attempting to bring claims based upon employment (or the lack thereof) and food-stamp benefits. In addition, although the form on which Scutt filed the Complaint states that his claims are brought under Title VII of the Civil Rights Act of 1964 (Title VII), at

---

[3]The Complaint does not identify the nature of the "request" that Scutt made.

4

the very least it appears that the Americans With Disabilities Act (ADA) may be relevant, given that Scutt asserts disability discrimination.   Whatever may be the case, however, as alleged, the Court is entirely unable to assess whether any such claims may proceed, even at this preliminary juncture.

First, although Scutt indicates that he is complaining about a failure to employ and/or promote him, at no point does he allege that *Defendant*, BESSD, employed him (and, thus, could promote or not promote him).

Second, one of the principal claims in the Complaint appears to be that, in some fashion, Scutt was not provided a reasonable accommodation to help him obtain employment.   Scutt, however, does not identify his disability or the requested accommodation.   *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004) (stating that, to allege a disability discrimination claim under Title II of the ADA, a plaintiff must allege he is an individual with a disability, he is otherwise qualified to participate in or receive a public entity's services, he was denied said services, and the denial was by reason of his disability, including the failure to provide a reasonable accommodation).[4]   Further, these allegations appear related to *unemployment*, something which is not related to the actions of

---

[4] To the extent Scutt intended to rely upon the ADA, the Court assumes he also intended to rely upon Title II of that statute, given that he names BESSD as a defendant and Title II concerns "public entities."   *See* 42 U.S.C. § 12132.

*Defendant* BESSD, given that, as Scutt acknowledges, that entity is concerned with "food stamp benefits."   As such, it would appear that Scutt has not named the correct defendant, at least with respect to his "reasonable accommodation" allegation.   Moreover, although Scutt appears to allege that he was denied help in obtaining employment, there is no allegation regarding which, if any, public entity provides this service.

Third, Scutt appears to allege that he was denied food stamp benefits due to his race or color.   As an initial matter, it is not clear under what federal statute this claim is brought, given that it is not Title VII, which concerns employment discrimination, or the ADA, which concerns disability discrimination.   This may be problematic, as Scutt is suing a State agency (BESSD), which is, generally, immune from suit in federal court unless the State consents to suit or Congress unequivocally expresses its intent to abrogate immunity.   *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating that immunity from suit applies to State agencies and departments). However, arguably, this issue may be affected by the relief Scutt seeks and whether he can name a defendant amenable to suit.   *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (explaining that a federal court may *enjoin* a State *official* from violating federal law).   Nonetheless, at the very least,

Scutt must identify the federal law that has been allegedly violated, the State official responsible for any such violation, and the relief he seeks to remedy the violation.   Until Scutt has made these preliminary allegations, the Court declines to further address any claim in this regard.

In summary, the Complaint is DISMISSED WITHOUT PREJUDICE.[5] Should Scutt choose to file an amended complaint, he may not incorporate any part of the original complaint, Dkt. No. 1, in the amended complaint.   Rather, all allegations must be re-typed or re-written in their entirety.   To the extent a claim is not re-alleged in an amended complaint, the claim may be deemed voluntarily dismissed.   *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).

In addition, in any amended complaint Scutt may file, he must write short, plain statements telling the Court: (1) the specific basis of this Court's jurisdiction;

---

[5]For the same reasons, the motion for appointment of counsel, Dkt. No. 4, is DENIED.   *See Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416-417 (9th Cir. 1994) (explaining that courts consider the following three factors in determining whether to appoint counsel: "(1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's claim."); *Williams v. 24 Hour Fitness USA, Inc*., 2014 WL 7404604, at *2 (D. Haw. Dec. 30, 2014) (stating that a plaintiff has the burden of persuasion as to all three factors, and an unfavorable finding as to any one factor may be fatal to the request).

(2) the constitutional or statutory right(s) he believes were violated; (3) the name of the defendant(s) who violated those right(s); (4) exactly what each defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Scutt's right(s); and (6) what specific injury he suffered because of that defendant's conduct.   To assist Scutt in this endeavor, the Court will mail him a blank copy of a Complaint for a Civil Case.

## III.   Conclusion

Scutt's application to proceed *in forma pauperis*, Dkt. No. 3, is GRANTED. Scutt's motion for appointment of counsel, Dkt. No. 4, is DENIED.

The Complaint, Dkt. No. 1, is DISMISSED WITHOUT PREJUDICE with leave to amend as set forth herein.   The Clerk of Court is DIRECTED to mail Scutt a blank Complaint for a Civil Case (Pro Se 1).

Scutt may have until **May 29, 2020** to file an amended complaint.   **The Court cautions Scutt that failure to file an amended complaint by May 29, 2020 may result in the automatic dismissal of this action without prejudice.**

IT IS SO ORDERED.

Dated: April 30, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge